Henry Warren HORN, Appellant,

v.

BURNS AND ROE, a corporation, and Stearns-Roger, a corporation, Appellees.

No. 75–1588.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1976.

Decided June 4, 1976.

August Ross, Omaha, Neb., for appellant; Robert E. O'Connor, Omaha, Neb. and Russell N. Cranmer, Wichita, Kan. on the brief.

Robert T. Grimit, Lincoln, Neb., for Burns and Roe.

John R. Douglas, Omaha, Neb., for Stearns-Roger.

Before HEANEY, BRIGHT and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

In this appeal, Henry Horn challenges the constitutionality of the Nebraska statute[1] which limits the time for commencing actions based on "professional negligence" and as a result of which his claim for personal injuries against Burns & Roe, Inc. and Stearns-Roger Corporation was dismissed on motion as time barred under Nebraska law.[2]

We take as true the well-pleaded facts appearing in the complaint:

On June 4, 1971, while employed by Jelco, Inc. as a steamfitter in the construction of the Cooper Nuclear Station at Brownville, Nebraska, Horn suffered substantial injuries when a heavy main steamline failed, causing him to fall with the steamline to the ground. Burns & Roe, Inc., an engineering and architectural firm, designed and prepared the plans and specifications for the power plant and in particular the piping and hangers upon which Horn was working at the time of the accident. Stearns-Roger Corporation, an organization of engineers, was employed to check and control the quality of the materials used in the construction project, including the piping and hangers.

On March 17, 1972, the Nebraska legislature enacted Neb.Rev.Stat. § 25-222 (Supp.1974), a two-year statute of limitations for causes of action based on "professional negligence":

*Professional negligence; limitation of action.* Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided,* if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further,* that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.[3]

Section 25-222 became effective July 6, 1972. Horn's complaint was filed May 24, 1974. Burns & Roe and Stearns-Roger entered motions to dismiss on the ground that the action was barred as to them by Section 25-222.[4] In separate unpublished memo-

1. Neb.Rev.Stat. § 25-222 (Supp.1974).

2. Horn brought his action against six corporate defendants. Diversity jurisdiction is found under 28 U.S.C. § 1332. This appeal was perfected following an order entered pursuant to Fed.R.Civ.P. 54(b).

3. Neb.Rev.Stat. § 25-222 (Supp.1974) provides a specific exception from the normal four-year statute of limitations for actions based on ordinary negligence, codified at Neb.Rev.Stat. § 25-207 (1964).

4. In *Educational Service Unit No. 3 v. Mammel, Olsen, Schropp, Horn & Swartzbaugh, Inc.*, 192 Neb. 431, 433, 222 N.W.2d 125, 127 (1974), the Supreme Court of Nebraska had previously held that Section 25-222 could constitutionally be retrospectively applied to accrued causes of action:

A statute of limitations which does not impair existing substantive rights but only alters the procedural enforcement of those rights operates on all proceedings instituted after its passage, whether the rights accrued before or after that date.

In the present action, the District Court found that the time between the passage of Section 25-222 and its effective date provided a reasonable and sufficient period to bring suit. Horn does not contest this holding on appeal.

Horn did not allege any facts which would invoke the exception to Section 25-222 for those causes of action which are not discovered or could not reasonably be discovered within the two-year limitations period. The motions to dismiss were therefore an appropriate method of raising the statute of limitations defense. *See* Fed.R.Civ.P. 12(b).

randum opinions, the District Court [5] sustained the motions, holding that both the practice of engineering and architecture were "professional" within the ambit of the statute of limitations and that the work rendered within the parameters of the complaint was of a "professional" nature.

■ On appeal, Horn contends that Section 25–222 is so vague and indefinite as to be incapable of application and that it thus unconstitutionally deprives him of his substantive right of action against these defendants.[6] We disagree and therefore affirm the judgment of the District Court.

■ The Supreme Court has recognized that a noncriminal statute is unconstitutionally vague under the due process clause of the Fifth or Fourteenth Amendments when its language does not convey sufficiently definite warning as to the proscribed conduct when measured by common understanding or practice. *See Arnett v. Kennedy*, 416 U.S. 134, 158–64, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Keyishian v. Board of Regents*, 385 U.S. 589, 597–604, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); *Joseph E. Seagram & Sons, Inc. v. Hostetter*, 384 U.S. 35, 48–49, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); *Jordan v. DeGeorge*, 341 U.S. 223, 230–32, 71 S.Ct. 703, 95 L.Ed. 886 (1951); *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.*, 299 U.S. 183, 196–97, 57 S.Ct. 139, 81 L.Ed. 109 (1936). *See generally* Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67, 69 n. 16 (1960). A noncriminal statute is not unconstitutionally vague, however, where its terms are such that the ordinary person exercising common sense can suffi-

ciently understand and fulfill its prescriptions. *Broadrick v. Oklahoma*, 413 U.S. 601, 607–08, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Civil Service Commission v. Letter Carriers*, 413 U.S. 548, 575–80, 93 S.Ct. 2880, 2895–97, 37 L.Ed.2d 796, 814–17 (1973). *See Arnett v. Kennedy, supra*, 416 U.S. at 159–60, 94 S.Ct. 1646–47, 40 L.Ed.2d at 36. A finding of vagueness will thus result only where "the exaction of obedience to a rule or standard * * * was so vague and indefinite as really to be no rule or standard at all * * * ", *A. B. Small Co. v. American Sugar Refining Co.*, 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925), or where the statute is written in such terms that "men of common intelligence must necessarily guess at its meaning and differ as to its application * * * ". *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). *See Broadrick v. Oklahoma, supra*, 413 U.S. at 607–08, 93 S.Ct. 2913, 37 L.Ed.2d 836–37; *Rowan v. United States Post Office Department*, 397 U.S. 728, 740, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970).[7]

■ Horn contends that the terms "professional negligence" and "professional services" are fatally vague because they subject him to the limitations period as against Burns & Roe and Stearns-Roger without providing fair warning of this result. Horn does not suggest more specific language which could have been utilized by the statute other than an exclusive listing of the professions which are within its scope. Even if more specific language could be devised, it is apparent that the

---

5. The Honorable Robert V. Denney, United States District Court for the District of Nebraska.

6. While the Supreme Court of Nebraska held the retrospective impact of Section 25–222 to be constitutional in *Educational Service Unit No. 3 v. Mammel, Olsen, Schropp, Horn & Swartzbaugh, Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974), the issue of statutory vagueness was not raised or addressed. A holding of unconstitutional vagueness would thus not be precluded by this prior decision. *See Keyishian v. Board of Regents*, 385 U.S. 589, 593–95, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

7. There is clearly no constitutional requirement that all terms utilized in this state statute be defined. While undefined terms may be construed by the Nebraska courts upon judicial inquiry, however, the federal courts are without authority to provide limiting interpretations of state statutes. *See Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).

absence of criminal sanctions requires less literal exactitude in order to comport with due process. *Massachusetts Welfare Rights Organization v. Ott,* 421 F.2d 525, 527 (1st Cir. 1969). *See Winters v. New York,* 333 U.S. 507, 515, 68 S.Ct. 665, 92 L.Ed. 840 (1948); Note, The Void-for-Vagueness Doctrine in the Supreme Court, *supra,* 109 U.Pa.L.Rev. at 69 n. 16.

▇ The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding. The terms "professional negligence" and "professional services" are utilized in this manner in Section 25–222. They are directed to acts of those engaged in occupations applying specialized knowledge and intellectual skills to the performance of their duties. *Swassing v. Baum,* 195 Neb. 651, 656, 240 N.W.2d 24, 27 (1976). In *Marx v. Hartford Accident and Indemnity Co.,* 183 Neb. 12, 13–14, 157 N.W.2d 870, 871–72 (1968), the Supreme Court of Nebraska interpreted the phrase "professional services" in the context of a medical malpractice insurance agreement in the following manner:

> Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special

learning or attainments of some kind. The term "professional" in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. * * * In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself. * * * [citations omitted] [8]

*See also Ocean Accident & Guarantee Corp. v. Herzberg's, Inc.,* 100 F.2d 171, 172–73 (8th Cir. 1938), *cert. denied,* 306 U.S. 645, 59 S.Ct. 584, 83 L.Ed. 1044 (1939); *Village of Dodge v. Guidinger,* 87 Neb. 349, 350, 127 N.W. 122, 122–23 (1910). This interpretation was recently adopted by the Nebraska Supreme Court as the standard for analysis of Section 25–222 in *Swassing v. Baum, supra,* 195 Neb. at 656, 240 N.W.2d at 27.[9] The services rendered by appellees and described in the complaint [10] are well within

8. A similar interpretation was provided in *County of Broome v. Vincent J. Smith, Inc.,* 78 Misc.2d 889, 358 N.Y.S.2d 998, 1002 (Sup.Ct. 1974), in which a statute of limitations for "professional malpractice" was construed to include architects:

> The considerations responsible for the application of this exception to the professions of medicine, law and accounting apply also to the profession of architecture. The architect creates and recommends plans to his client. These plans, conceived in his imagination, are proposed to the client as products of his education, experience and judgment. The client may offer suggestions to the architect, just as he might to his doctor, lawyer or accountant, but generally the client is required to rely almost totally on the professional advice of the architect.

9. State statutes have been upheld by the Supreme Court against vagueness challenges when prior statutory construction by a state court has removed the alleged vagueness. *See*

*Wainwright v. Stone,* 414 U.S. 21, 22–23, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Mishkin v. New York,* 383 U.S. 502, 506–07, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); *Minnesota ex rel. Pearson v. Probate Court of Ramsey County,* 309 U.S. 270, 273–74, 60 S.Ct. 523, 84 L.Ed. 744 (1940). We think the interpretation of "professional services" in *Marx v. Hartford Accident and Indemnity Co.,* 183 Neb. 12, 13–14, 157 N.W.2d 870, 871–72 (1968), which predated the accident, was in itself a sufficient judicial inquiry as to the meaning ordinarily attributed to that phrase. *See State ex rel. Baldwin v. Strain,* 152 Neb. 763, 771–72, 42 N.W.2d 796, 801 (1950).

10. The complaint stated:
IX.
. That the defendant Burns and Roe, architects and engineers, designed and prepared the plans and specifications for the same and in particular the piping and hangers upon which plaintiff was working at the time of said accident.

the standards of "professional services" as set forth in *Marx*. *See also* Neb.Rev.Stat. §§ 81–839 and 81–840. A breach of duties in connection with such services would necessarily be "professional" negligence.[11]

█ The ordinary meaning of "professional negligence" and "professional services" is thus not "so vague and indefinite as really to be no rule or standard at all" and the statute cannot be said to be unconstitutional and void on its face. Since the statute was not shown to have been unconstitutionally applied to the architectural and engineering services involved in this case, the District Court properly dismissed Burns & Roe and Stearns-Roger for failure of plaintiff Horn to institute this action within the two-year limitations period of Section 25–222.

Affirmed.

X.
That the defendant Stearns and Rogers was employed to check and control the quality of the materials used in the construction of said facility and in particular the piping and hangers upon which plaintiff was working at the time of said accident.

11. Moreover, it should be noted that definiteness of the statute as to other hypothetical situations not implicated in this case need not be demonstrated, since the architectural and engineering work described in the complaint is clearly within the scope of the language of the statute. As this Court recognized in *Big Eagle v. Andera*, 508 F.2d 1293, 1297 (8th Cir. 1975), regarding a criminal statute:

The potential vagueness of a statute, as applied in hypothetical cases, is no ground for holding the statute unconstitutional. A defendant cannot claim that a statute is unconstitutional in some of its reaches if it is constitutional as applied to him.

*See Parker v. Levy*, 417 U.S. 733, 754–57, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Dombrowski v. Pfister*, 380 U.S. 479, 491–92, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *United States v. Harriss*,

347 U.S. 612, 617–18, 74 S.Ct. 808, 98 L.Ed. 989 (1954). This concept was applied by the Supreme Court to a vagueness challenge of the Oklahoma Merit System of Personnel Administration Act, a civil statute, in *Broadrick v. Oklahoma*, 413 U.S. 601, 608, 610, 93 S.Ct. 2908, 2914, 2915, 37 L.Ed.2d 830 (1973):

[E]ven if the outermost boundaries of § 818 may be imprecise, any such uncertainty has little relevance here, where appellants' conduct falls squarely within the "hard core" of the statute's proscriptions * * *.

* * * * * *

Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.

*See Paulos v. Breier*, 507 F.2d 1383, 1387–88 (7th Cir. 1974); *Pordum v. Board of Regents*, 491 F.2d 1281, 1285–86 (2d Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 74, 42 L.Ed.2d 71 (1974).