720 P.2d 540

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, a corporation, Plaintiff/Appellant,**

v.

**Stanley ASBURY, D.O.; Susan Slater and David Slater, w/h; Gloria Lund; Chris Wolcott; and Marie Josefowicz and Robert Josefowicz, w/h, Defendants/Appellees.**

**No. 2 CA–CIV 5543.**

Court of Appeals of Arizona, Division 2, Department B.

Feb. 19, 1986.

---

Slutes, Sakrison, Grant & Pelander, P.C. by Tom Slutes, Tucson, for plaintiff/appellant.

Haralson, Kinerk & Morey, P.C. by Carter Morey and Denneen L. Peterson, Tucson, for defendants/appellees Slater, Lund, Wolcott and Josefowicz.

Chandler, Tullar, Udall & Redhair by D.B. Udall, Tucson, for defendant/appellee Asbury.

## OPINION

LACAGNINA, Judge.

St. Paul Fire and Marine Insurance Company appeals from a declaratory judgment in favor of Stanley Asbury, D.O., Susan Slater and David Slater, wife and husband, Gloria Lund, Chris Wolcott, and Marie Josefowicz and Robert Josefowicz, wife and husband, providing Dr. Asbury with professional liability insurance coverage for conduct committed while performing gynecological examinations of Slater, Lund, Wolcott and Josefowicz. St. Paul claims Asbury's conduct, intentional and improper manipulation during gynecological examinations, was unprofessional and therefore not covered by his professional liability policy. We disagree and affirm.

The sole issue is whether the language "providing or withholding of professional services" (with no applicable policy exclusions) provides coverage for injuries and damages that result from unprofessional acts of a physician. St. Paul asks us to adopt the definition for "professional services" as stated in *Marx v. Hartford Accident & Indemnity Co.*, 183 Neb. 12, 157 N.W.2d 870 (1968), and accepted by other courts. *Bank of California, N.A. v. Opie*, 663 F.2d 977 (9th Cir.1981); *Gulf Insurance Co. v. Gold Cross Ambulance Service*, 327 F.Supp. 149 (W.D.Okla.1971); *Standlee v. St. Paul Fire and Marine Insurance Co.*, 107 Idaho 899, 693 P.2d 1101 (1984); *Hirst v. St. Paul Fire and Marine Insurance Co.*, 106 Idaho 792, 683 P.2d 440 (1984); *Multnomah County v. Oregon Automobile Insurance Co.*, 256 Or. 24, 470 P.2d 147 (1970).

The thrust of *Marx, supra*, and its progeny is an examination of the act performed rather than the actor and does not include all forms of a doctor's conduct simply because he is a doctor. Stated another way, the question of professional liability coverage turns upon the nature of the tortious act, and not upon the mere circumstance that the tortfeasor is a doctor.

The position of Dr. Asbury and the complaining patients is that his tortious conduct was committed in the course of and as an inseparable part of the professional services rendered. The trial court agreed with this position and stated:

The question of insurance coverage does not turn on whether the conduct was negligent or intentional, or whether or not there was an assault and battery. Regardless of the category in which the underlying complaints are placed, they clearly allege tortious conduct while treating the patients, and seek damages resulting from the providing of professional services. Furthermore, the tortious conduct, if it occurred, took place in the course of and as an inseparable part of the providing of professional services. Consequently, any damages would be those resulting from the providing of professional services by the insured.

The claims are within the language of the insurance policy, and the policy contains no exclusion of coverage which would be applicable. Coverage is therefore afforded.

The judgment of the trial court is supported by *St. Paul Fire and Marine Insurance Co. v. Mitchell*, 164 Ga.App. 215, 296 S.E.2d 126 (1982); *Vigilant Insurance Co. v. Kamby*, 114 Mich.App. 683, 319 N.W.2d 382 (1982); *Zipkin v. Freeman*, 436 S.W.2d 753 (Mo.1968).

In each of these cases, with differing facts, the courts focused on the patients' injuries which "resulted and [were] made possible only because there were professional services rendered during this time and others which should have been rendered but were not." *Zipkin v. Freeman, supra* at 763. The courts found that the alleged conduct if it occurred (a question for the trier of fact), took place during the course of treatment, that the doctors did not treat the patients properly, and as a result, they were injured. *St. Paul Fire and Marine Insurance Co. v. Mitchell, supra; Zipkin v. Freeman, supra.* The doctors' departure from standard practice during the course of treatment, their mishandling of the treatment is the essence of the claims.

The claims of Dr. Asbury's patients that he manipulated their clitorises while performing routine gynecological examinations, if true, was tortious conduct committed while providing professional services and covered by his insurance policy. Most of the cases cited to us by St. Paul are distinguishable because the tortious sexual abuse of the patient was not intertwined with and inseparable from the services provided. One example of noncovered sexual abuse not related to treatment is the case of *Hirst v. St. Paul, supra,* where a physician's sexual molestation occurred with a patient who was being treated for hand injuries suffered in a wrestling match.

Finally, St. Paul asks us to reverse the trial court because affirmance would be against public policy and provide indemnification of a physician for performing antisocial, illegal, immoral and unprofessional acts. We disagree and hold that the public policy of Arizona favors protecting the interests of injured parties. As the court stated in *Vigilant Insurance v. Kamby, supra:*

Initially, it is unlikely that the insured was induced to engage in the unlawful conduct by reliance upon the insurability of any claims arising therefrom or that allowing insurance coverage here would induce future similar unlawful conduct by practitioners. Nor does it appear that the policy was obtained in contemplation of a violation of the law.... Furthermore, coverage does not allow the wrongdoer unjustly to benefit from his wrong. It is not the insured who will benefit, but the innocent victim who will be provided compensation for her injuries.... In this instance, there is great public interest in protecting the interests of the injured party.

319 N.W.2d at 385 (citations omitted).

We affirm.

LIVERMORE, P.J., and HOWARD, J., concur.